UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NANETTE GROSS, et al.                                                                                          PLAINTIFFS

V.                                                                            CIVIL ACTION 3:13-cv-423-DPJ-FKB

BALTIMORE AIRCOIL
COMPANY, INC., et al.                                                                                        DEFENDANTS

ORDER

This product-liability case is before the Court on Plaintiffs' Motion to Remand [15], Plaintiffs' Motion to Abstain [17], Defendant Dickerson Thermal Solutions, Inc.'s Motion to Dismiss [5], Defendants' Joint Motion to Strike Witherell Affidavit [35], and Defendant Chem-Aqua, Inc.'s Motion to Dismiss [24].  The Court has considered the memoranda and submissions of the parties and finds that Dickerson Thermal Solutions was improperly joined.  Federal diversity jurisdiction therefore exists.  The remaining motions are resolved as follows:

I.      Facts and Procedural History

Plaintiffs were guests at the Hotel Chester in Starkville, Mississippi.  The Hortons stayed at the hotel in May 2010.  They were subsequently diagnosed with Legionnaire's disease, and Bobby Horton eventually died.  Nanette Gross and her husband Terry Gross stayed there in June 2010.  On July 6, 2010, Terry Gross was found dead from acute pneumonia.  Nanette Gross was diagnosed with severe sepsis with respiratory failure and legionella pnuemonia.

Plaintiffs allege that they became sick due to exposure to Legionella bacteria from a defective water-cooling tower at the hotel.  They filed a complaint in state court under the Mississippi Products Liability Act (MPLA) against Baltimore Aircoil Company, Inc., the manufacturer of the tower; Dickerson Thermal Solutions, Inc., which sold the tower to the hotel;

NCH Corporation, which serviced the tower; and Chem-Aqua, Inc., which also serviced the tower.  Baltimore Aircoil removed this case to federal court arguing diversity jurisdiction and jurisdiction over the case as a proceeding "related to" a bankruptcy action.  Plaintiffs filed a Motion to Remand [15] arguing that a valid claim exists against nondiverse Defendant Dickerson Thermal Solutions, which destroys this Court's jurisdiction.  Defendants counter that Dickerson Thermal Solutions was improperly joined, and Dickerson Thermal Solutions filed a Motion to Dismiss [5] arguing that Plaintiffs fail to state a claim against it.  Chem-Aqua also filed a motion to dismiss [24].

II.     Standard of Review

    A.     Improper Joinder

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal district court.  28 U.S.C. § 1441(a).  Defendants premise federal jurisdiction on 28 U.S.C. § 1332, under which the district courts have jurisdiction over civil actions between "citizens of different States."  28 U.S.C. § 1332(a)(1).  The diversity statute requires complete diversity between all named plaintiffs and all named defendants.  *E.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

The improper joinder rule "is a narrow exception to the rule that diversity jurisdiction requires complete diversity."  *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  To that end, "[t]he burden is on the removing party; and the burden of demonstrating improper joinder is a heavy one."  *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).  In evaluating a claim of improper joinder, "we examine if there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved."

*Smallwood*, 352 F.3d at 223 (citation omitted and punctuation altered).  But "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder."  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 n.9 (5th Cir. 2004) (en banc) (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

"Whether the case was properly removed is determined by reference to the allegations in a plaintiff's state court pleading."  *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116 (5th Cir. 1979) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)); *see also Gardner v. Cooksey*, 2:11-cv-255-KS-MTP, 2012 WL 968026, at *2 (S.D. Miss. Mar. 21, 2012) ("This court must refer to the allegations made in the original pleading to determine whether the plaintiff can make out a viable claim against the resident defendant.") (citations omitted).

A district court should ordinarily resolve an improper joinder claim by conducting Rule 12(b)(6)-type analysis.  *Smallwood*, 385 F.3d at 573.  The Court "must then evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff."  *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).  Similarly, the Court must resolve all ambiguities in controlling state law in the plaintiff's favor.  *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (citations omitted).  But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not improperly joined."  *Randle v. Smithkline Beecham Corp.*, 338 F. Supp. 2d 704, 708 (S.D. Miss. 2004) (citing *Badon*, 224 F.3d at 392–93).  Finally, "there are cases, hopefully few in number, in which the plaintiff has stated a claim, but has misstated or omitted discrete facts that would

determine the propriety of joinder." *Smallwood*, 385 F.3d at 573. In such cases, the district court has the discretion to "pierce the pleadings" and conduct a summary inquiry. *Id.*

      B.      Motion to Dismiss

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

III.     Analysis

      A.     Motion to Remand and Dickerson Thermal Solutions's Motion to Dismiss

Defendants argue that there is no reasonable basis to predict that state law would impose liability on Dickerson Thermal Solutions because it is an "innocent seller" under the MPLA. Under Mississippi law, "[i]n any action alleging that a product is defective . . . the seller of a product other than the manufacturer shall not be liable unless the seller . . . had actual or constructive knowledge of the defective condition of the product at the time he supplied the product." Miss. Code. Ann. § 11-1-63(h). The stated intent of this provision is "to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." *Id.*

Whether the innocent-seller statute applies to any of Plaintiffs' claims against Dickerson Thermal Solutions depends on the scope of its knowledge and involvement. As stated, actual or constructive knowledge would exclude Dickerson Thermal Solutions from the MPLA's protection for innocent sellers. *Id.* Likewise, if Dickerson Thermal Solutions did more than merely sell the cooling tower, then those acts would arguably fall beyond the scope of the MPLA and the protections of section 11-1-63(h). *See Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175, 181 (5th Cir. 2012) ("'[N]egligence claims can be brought alongside strict liability claims.'" (quoting *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 846 (S.D. Miss. 2010))).

Plaintiffs pursue both theories. They allege in their Complaint that Dickerson Thermal Solutions "knew or should have known": (1) that cooling towers create Legionnaire's disease hazards; (2) that the Hotel Chester site was not suitable; (3) that the cooling tower should be located far from guests and staff; and (4) that the cooling tower should be operated to avoid ideal growth temperature for Legionella organisms. Pls.' Compl. [3] § VII. They further aver that

Dickerson Thermal Solutions "located the cooling tower in a position that provided significant exposure to the guests . . . ." *Id.* § VII.

But the Complaint fails to state any facts to support these allegations. According to Defendants, the conclusory assertions are demonstrably false or misstated and should be rejected upon summary inquiry. In particular, they point to David Dickerson's affidavit denying any actual or constructive knowledge of a defect in the cooling tower when it was sold in 1985. Dickerson Aff. [1-1] ¶ 8. Dickerson likewise negates all possible avenues for liability under the MPLA, and expressly states, "Dickerson Thermal Solutions, Inc. merely sold the cooling tower. It did not install or locate the cooling tower at the hotel" as alleged in the Complaint. *Id.* ¶ 10.

If true, Dickerson's affidavit demonstrates that the facts were misstated in the Complaint and that summary inquiry is appropriate. *Smallwood*, 385 F.3d at 573. And though the burden always remains on the removing party to establish jurisdiction, *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 402 (5th Cir. 2013), Dickerson's affidavit would, if unrebutted, meet Defendants' burden of showing that the MPLA precludes recovery against this nondiverse defendant. *See Michels v. Safeco Ins. Co. of Ind.*, — F. App'x —, 2013 WL 5935067, at *4 (5th Cir. Nov. 6, 2013) (holding that "plaintiff must produce at least some controverting evidence" (citing *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) ("We agree with the district court that, considering defendants' affidavits 'in light of the plaintiffs' lack of evidence,' there is no reasonable basis for predicting that plaintiffs might establish liability in their conspiracy claim against the in-state defendants" (citations omitted))); *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 F. App'x 911, 916–18 (5th Cir. 2009) (finding improper joinder based on defendant's

affidavits denying involvement in accident (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 310–11 (5th Cir. 2005))).

Faced with Dickerson's affidavit, Plaintiffs countered with one from their liability expert Linden Witherell. Witherell was retained in 2010, some 25 years after Dickerson Thermal Solutions sold the cooling tower. He states that he interviewed David Mollendor, president of the parent company for the Chester Hotel; David Dickerson; and "other [unidentified] staff of the Chester Hotel." Witherell Aff. [15-1] ¶ 8. He also inspected the cooling tower. *Id.* ¶ 7. Based on this investigation, Witherell offered the following opinions: (1) Dickerson Thermal Solutions "was technical consultant [sic] that specified the air conditioning system"; (2) Dickerson Thermal Solutions "knew or should have known of the Legionnaires' disease hazards created by cooling towers and that the Hotel Chester site was not suitable to the installation of a wet type heat injection unit"; (3) despite this knowledge, Dickerson Thermal Solutions did not warn the Hotel Chester; (4) and Dickerson Thermal Solutions located the unit. *Id.* ¶¶ 11–15.

If viewed in light of Rule 56(c), Witherell's affidavit would not create a question of fact for the jury, and judgment would be entered as a matter of law. The Fifth Circuit has consistently

> rejected the argument that, in the context of summary judgment, Fed. R. Evid. 705 does not require an expert's affidavit to contain factual support for the opinion expressed therein. *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 307 n.4 (5th Cir. 1990). For the purposes of summary judgment under Fed. R. Civ. P. 56(e) [now 56(c)(4)], an expert affidavit must include materials on which the expert based his opinion, *as well as an indication of the reasoning process* underlying the opinion.

*Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998) (emphasis added); *see also Crayton v. Amadeo Rossi, S.A.*, 384 F. App'x 330, 332–33 (5th Cir. 2010) (collecting cases and

7

holding that "conclusory allegations that are actually opinions devoid of an underlying factual basis and explanation" are not competent summary-judgment evidence).

Witherell fails to provide this factual explanation, and it is not apparent how he arrived at the conclusion that Dickerson Thermal Solutions knew or should have known of the alleged defect or that it "located" the cooling tower.  It is possible that Dickerson told him (though that would contradict Dickerson's sworn affidavit).  The conclusions may have been based on interviews with Mollendor—though it appears from the record that Mollendor was not connected to the property during any relevant time.  Or, the conclusions could be based on interviews with other unidentified witnesses.  Witherell never says, and either of the final two options would constitute hearsay falling beyond Witherell's personal knowledge.  Again, such evidence is not competent under Rule 56(c)(4).[1]

Plaintiffs seem to recognize these deficiencies, but argue that they are meaningless when considering a motion to remand because the *Smallwood* "summary inquiry" is not a summary-judgment-type review.  *See* Pl.'s Reply [47] at 3–4 (citing *Brentar v. Ford Motor Co.*, No. 09-cv-2685, 2010 WL 3210955, at *5 (N.D. Ohio Aug. 10, 2010)).  Defendants reject this argument out of hand, but fail to cite any authority for their position.

    1.  Summary-Inquiry Standard

Courts considering improper joinder often reference "summary inquiry" and "summary-judgment-type evidence" citing *Smallwood*, but the meaning of those terms is infrequently

---

[1] "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that hearsay is not proper summary-judgment evidence).

explored. As an initial point, the standards are obviously not identical to the standards for summary judgment. Under Rule 56, the Court would decide all questions regarding the applicable law. It would then apply that law to the record evidence viewed in a light most favorable to the nonmoving party. When considering improper joinder, all facts *and* disputed legal questions are viewed in a light most favorable to the nonmoving party. *See Travis*, 326 F.3d at 649. The Court must also "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Id.* This again differs from Rule 56 where the party must go beyond the pleadings. And, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. These observations have led some courts to conclude that the procedure more closely resembles Rule 12(b)(6). *See, e.g.*, *Alonso ex rel. Estate of Cagle v. Maytag Corp.*, 356 F. Supp. 2d 757, 760 (S.D. Tex. 2005).

But to what extent must the evidence comply with Rule 56? *Smallwood* describes a "summary inquiry," citing footnote 10 of *Badon v. RJR Nabisco, Inc.* There, the Fifth Circuit held:

> the district court in its discretion may pierce the pleadings. [F]raudulent joinder is established if the summary judgment type evidence demonstrates that as a matter of law, there is no reasonable basis for predicting that the plaintiff might establish liability against a named in-state defendant.

224 F.3d at 389 n.10 (some punctuation altered).

Indeed the Fifth Circuit often states that district courts must consider something akin to "summary judgment type evidence" without further explanation. *Id.*; *see also Anderson*, 342 F. App'x at 916–18 (noting that plaintiff failed to "proffer *competent* summary judgment-type

evidence" (emphasis added)); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (reiterating that "the scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim" (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (citing *Travis,* 326 F.3d at 648–49))); *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) ("'[T]he proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment . . . .'" (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir.1981))); *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (court must consider "appropriate documentation"). And though it provided no analysis of this issue, an unpublished opinion from the Fifth Circuit rejected inadmissible hearsay as a basis for remand in *Ameen v. Merck & Co.*, 226 F. App'x 363, 371 (5th Cir. 2007).

But the Court seemed to strike a different tone in *McKee v. Kansas City Southern Railway Co.*, where the plaintiff initially produced no evidence rebutting the defendants' affidavits denying liability. 358 F.3d 329, 332 (5th Cir. 2004). Though the court noted that district courts may "consider summary judgment-type evidence in the record," it held that they

> must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. Therefore, although the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard.

*Id*. at 334 (citing *Travis*, 326 F. 3d at 648–49). This reference to Rule 12(b)(6) could be viewed as a comment on the deference given to state law and uncontested facts, but the court went on to

overrule the district court's order denying remand, holding that the district court delved into the merits when it relied on the defendants' affidavits denying any actionable conduct. *Id*. at 336.[2]

*McKee* appears to make a fine distinction between addressing the merits and determining whether joinder was otherwise improper because there is no reasonable basis for predicting success. Certainly the focus remains on the latter issue. And courts within the Fifth Circuit have generally—though not uniformly—applied Rule 56(c) standards while conducting summary inquiries to answer that question. *See Sonnier v. Magic Circle Corp*., No. 13-0246, 2013 WL 5781323, at *3 (W.D. La. Oct. 25, 2013) (facing a nearly identical question and recommending denial of motion to remand because plaintiff relied on inadmissible hearsay to show seller knew or should have known of defect); *Davidson v. Ga. Pac. LLC*, No. 12-1463, 2013 WL 1768015, at *4 (W.D. La. Apr. 24, 2013) (holding that attorney affidavit should not be considered on motion to remand because it lacked personal knowledge and was based on speculation (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57–58 (5th Cir. 1993) (holding that lawyer affidavit signed without personal knowledge "sheds little, if any, light on" subject))); *Kelly v. Dolgencorp, LLC*, No. 10-00879, 2010 WL 3522435, at *5 (W.D. La. Sept. 1, 2010) (applying Rule 56 standards but finding affidavit was based on personal knowledge); *Wildmon v. EMC Nat'l Life Co.*, No. 1:08CV173-SA-JAD, 2009 WL 691226, at *3 (N.D. Miss. Mar. 11, 2009) (applying predecessor to Rule 56(c)(4) to affidavit offered to support remand and striking affidavit as speculative). *But*

---

[2] If *McKee* can be read to hold that a party seeking remand need not produce evidence even after the party seeking federal jurisdiction negates the basis of liability against the nondiverse defendant, it would seemingly contradict *Michels*, 2013 WL 5935067, at *4, *Anderson*, 342 F. App'x at 916–18, and *Badon*, 224 F.3d at 393.

*see Patton v. Adesa Tex., Inc.*, — F. Supp. 2d —, 2013 WL 6264792, at *2 (N.D. Tex. Dec. 4, 2013) (holding that "hearsay issue is irrelevant at this juncture").

Neither party has explored any of these authorities, and the authorities themselves do not dig deeply into the issue. One district court did, however, address this same argument more directly. In *Cormie's Grocery & Deli, Inc. v. Colony Ins. Co.*, the plaintiff seeking remand argued that its affidavit proving potential liability against a nondiverse defendant need not comply with Rule 56 because the issue was before the court on a motion to remand. No. 12-562, 2012 WL 2906634, at *5 (W.D. La. July 16, 2012). The court considered but rejected the argument and struck the affidavit as insufficient under Rule 56(c)(4). *Id*. Based on all of this, it appears that "summary-judgment-type evidence" must be competent under Rule 56(c).

    2.  Plaintiffs' Evidence

In the present case, it is simply impossible to know whether Witherell's opinions are based on hearsay, something he observed, or rank speculation. They likewise appear to be legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Even under a Rule 12(b)(6) standard, such assertions are not sufficient. *Id*. at 678 (noting that plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").[3]

---

[3] Perhaps discovery would have clarified Plaintiffs' proof. And indeed the Court must "take into account the status of discovery and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *McKee*, 358 F.3d at 334. But in this case,

So while it appears that Rule 56 standards apply to the competency of the submitted record evidence, the Court concludes that this affidavit would fail under those standards or under Rule 12(b)(6)-type review.  The motion to strike should be granted.

The only other "evidence" Plaintiffs offer appears for the first time in their reply.  According to them, "The Legionnaire's Disease outbreak first occurred on July 21, 1976 in Philadelphia.  In early January of 1977, the bacteria which caused Legionnaire's Disease was isolated by the U.S. Center for Disease Control."  Pls.' Reply [47] at 2.  Based on these facts, Plaintiffs conclude that "since . . . 1977, the relationship between Legionnaire's Disease and cooling towers has been known throughout the industry."  *Id.*

As an initial point, these arguments are not supported with summary-judgment-type evidence.  Moreover, these "facts" do not mention cooling towers or otherwise link the bacteria or disease to a defect in cooling towers.  And even accepting these facts as true, the Court finds that they do not support an allegation that Dickerson Thermal Solutions "had actual or constructive knowledge of the defective condition of" *this* cooling tower at the time it was sold in 1985—a point also missing in Witherell's affidavit.  *See* Miss. Code Ann. § 11-1-63(h).

In sum, there exists no reasonable basis to predict Plaintiffs might recover from Dickerson Thermal Solutions under the MPLA.  *See Jones v. Polaris Indus., Inc.*, No. 1:12CV44-B-S, 2013 WL 1193740, at *2 (N.D. Miss. Mar. 22, 2013) (holding that "statements in the complaint related to [conduit seller's] knowledge of and involvement in the defect are

---

the Court allowed remand-related discovery and Plaintiffs chose not to conduct it.  Text Order, July 31, 2013.

conclusory allegations not based in any specific fact. Conclusory statements alone are insufficient to state a claim." (citing *Twombly*, 550 U.S. at 555)).

   3.  Negligence

Plaintiffs allege that Dickerson Thermal Solutions was negligent because it knew or should have known of the hazards yet specified, recommended, supplied, and located the cooling tower and failed to warn the Hotel Chester of the risks associated with the cooling tower. Pls.' Compl. [3] § VII. Defendants primarily argue that Dickerson Thermal Solutions cannot be liable under this theory because Plaintiffs' negligence allegations are merely their products-liability claims couched in different terms. Plaintiffs do not address, and therefore waive, this argument.

Nevertheless, "a party may not disguise a products liability claim as a negligence claim to avoid dismissal." *Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175, 181 (5th Cir. 2012) (citing *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 844 (S.D. Miss. 2010)). "'Numerous district courts have recognized that the MPLA subsumes common law negligence and misrepresentation claims based on a defective product.'" *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013) (quoting *Lashley v. Pfizer, Inc.*, 877 F. Supp. 2d 466, 471 (S.D. Miss. 2012)). A negligence claim against an innocent-seller cannot proceed where the negligence claim "'fail[s] to present any new discussion or claim that does not relate back to the . . . products liability claim . . . .'" *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 940 (Miss. 2011) (citing *Moss v. Batesville Casket Co., Inc.*, 935 So. 2d 393, 406 (Miss. 2006)).

Plaintiffs' negligent-failure-to-warn claim similarly fails. In *Murray*, the Fifth Circuit affirmed dismissal of the same claim because it was "nothing more than a creative attempt to

hold [the defendant] liable . . . for failing to warn [the plaintiffs] about the defect[]." *Murray*, 478 F. App'x at 182. Here, Plaintiffs claim that Dickerson Thermal Solutions "did not warn the Hotel Chester" "that the cooling tower should be operated in a manner that would avoid ideal growth temperature for Legionella organisms." Pls.' Compl. [3] § VII. This claim is simply based on a failure to warn Plaintiffs of the alleged defect, which is still subject to the innocent-seller exemption. *See Murray*, 478 F. App'x at 182; *Williams v. Ford Motor Co.*, No. 3:11CV110-NBB-SAA, 2012 WL 2990165, at *3 (N.D. Miss. July 20, 2012) (dismissing negligent-failure-to-warn claims as barred by the innocent-seller provision).

        4.        Breach of Warranty

In their Complaint, Plaintiffs allege that Defendants breached implied and express warranties. Pls.' Compl. [3] § X. Yet Plaintiffs fail to specify any express warranties they allege Dickerson Thermal Solutions made. And to the extent Plaintiffs allege breach of implied warranties, those claims are also precluded by the innocent-seller provision. *See Murray*, 478 F. App'x at 180 ("[I]f the plaintiff seeks damages for personal injury as a result of an allegedly defective product, the innocent seller exemption applies to a breach of implied warranty claim." (collecting cases)).

Defendants have met their burden and demonstrated that there is no reasonable basis to predict that Mississippi law would impose liability on Dickerson Thermal Solutions because it is immune as an innocent seller. Dickerson Thermal Solutions therefore was improperly joined, the

15

Court has diversity jurisdiction, and Plaintiffs' Motion to Remand [15] is denied.[4]  For the same reasons, Dickerson Thermal Solutions's Motion to Dismiss [5] is granted.

   B.   Chem-Aqua's Motion to Dismiss

Chem-Aqua filed a Motion to Dismiss under Rule 12(b)(6), denying involvement with the Hotel Chester or its cooling tower until after the Plaintiffs were allegedly exposed to bacteria.  This argument rests solely on an affidavit attached to the motion.

Ordinarily, a court decides a motion to dismiss for failure to state a claim looking only at the face of the complaint.  *See* Fed. R. Civ. P. 12(d).  But according to the Fifth Circuit, "Rule 12(d) gives a district court 'complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'"  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1366 (1969); *Ware v. Assoc. Milk Producers, Inc.*, 614 F.2d 413, 414–15 (5th Cir. 1980)).  If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(d); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2011).

By submitting an affidavit, Chem-Aqua has presented matters outside the pleadings.  If the Court were to consider the affidavit, it would convert the motion to one for summary judgment and give Plaintiffs an opportunity for discovery.  The only issue raised by Chem-

---

[4] Because the Court has diversity jurisdiction, there is no need to determine whether the Court also has jurisdiction over the claims as "related to" a bankruptcy action under 28 U.S.C. § 1334(b).  The Court likewise need not determine whether it should abstain under 28 U.S.C. § 1334(c) as abstention applies only to cases where jurisdiction is premised on 28 U.S.C. § 1334.  Plaintiffs' Motion to Abstain [17] is denied.

Aqua's motion is a factual issue more appropriately raised in a summary-judgment motion, so the Court will exercise its discretion and not accept the affidavit at this stage.  *See Isquith*, 847 F.2d at 194 n.3.  Chem-Aqua does not otherwise argue that Plaintiffs failed to state a claim against it.  Its motion to dismiss is denied.

V.      Conclusion

The Court has considered all the arguments.  Those not specifically addressed would not change the result.  Plaintiffs' Motion to Remand [15] and Motion to Abstain [17] are denied.  Dickerson Thermal Solutions's Motion to Dismiss [5] is granted, Chem-Aqua's Motion to Dismiss is denied, and Defendants' Motion to Strike [35] is granted.

**SO ORDERED AND ADJUDGED** this the 21st day of March, 2014.

            s/ *Daniel P. Jordan III*
            UNITED STATES DISTRICT JUDGE