UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NANETTE GROSS, et al.                                                                                      PLAINTIFFS

v.                                                                          CIVIL ACTION NO. 3:13cv423-DPJ-FKB

BALTIMORE AIRCOIL COMPANY, INC., et al.                                              DEFENDANTS

ORDER

This personal-injury diversity action is before the Court on Plaintiffs' Motion to Exclude [276] the expert testimony of Robert Cunningham and Motion in Limine [279] to exclude a subsequent remedial measure taken by Defendant Suite Dreams America, Inc. ("Suite Dreams"). The Court, having considered the memoranda and submissions of the parties along with the pertinent authorities, finds that both motions should be denied.

I.      Background

In very general terms, Plaintiffs allege that they contracted Legionnaire's disease at the Hotel Chester in Starkville, Mississippi, where they were guests in 2010. Plaintiffs and other members of their families allegedly became sick due to exposure to Legionella bacteria from a defective water-cooling tower at the hotel. At least one of these individuals died from the disease and others suffered severe injury. The survivors filed suit under the Mississippi Products Liability Act (MPLA) against Baltimore Aircoil Company, Inc., the manufacturer of the tower; Dickerson Thermal Solutions, Inc., which sold the tower to the hotel; NCH Corporation, which provided water-treatment services related to the hotel's cooling tower; and Chem-Aqua, Inc., which also serviced the tower. Suite Dreams, the owner and operator of the Hotel Chester, was subsequently joined as a third-party defendant. All Defendants other than NCH Corporation have since been dismissed from this case.

Plaintiffs' claims against NCH stem from its alleged failure to properly treat the Hotel Chester's water-cooling tower to prevent the growth of the Legionella bacteria. Plaintiffs focus in particular on the actions of Ed Smith, an NCH sales representative. Smith provided chemical treatment products for the tower to David Mollendor, the hotel's owner and manager, during the period leading up to the outbreak. Plaintiffs contend that Smith recommended the wrong type of chemicals, causing Legionella bacteria to spread within the tower. *See generally* Pls.' Mem. [280] at 2–3.

After the outbreak, Mollendor hired a different water-treatment provider and various experts to assist in eliminating the bacteria from the tower. These experts ultimately found a "dead leg"—an area of a plumbing system where bacteria can grow due to lack of water flow—in the piping between the pumps that circulated water for the cooling tower. To remedy the dead leg, the experts constructed a bypass pipe between the pumps, which allowed the water treatment chemicals to rid the system of bacteria. This repair conducted by the hotel permanently resolved the Legionella outbreak. *Id.* at 3–5.

II.     Motion to Exclude Expert Testimony of Robert Cunningham

Plaintiffs first move to exclude a portion of defense expert Robert Cunningham's testimony under Federal Rule of Evidence 702. Specifically, Plaintiffs seek to prevent Cunningham from offering his opinion that Smith acted reasonably in recommending only one type of water treatment chemical—known as a "non-oxidizing biocide"—for use in the Hotel Chester's water-cooling tower.

A.     Standard

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . ." Fed. R. Evid. 702. "A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702). "[W]hether a proposed expert should be permitted to testify is case, and fact, specific." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). Moreover, the district court retains "'broad latitude' both in deciding how to determine whether an expert's testimony is reliable, and ultimately, whether the testimony is, in fact, reliable." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999)).

When evaluating expert testimony, the overarching concern is whether it is relevant and reliable. The Court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The gatekeeper function of the district court does not, however, replace trial on the merits. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

B.     Analysis

Based on Cunningham's expert report, Plaintiffs anticipate testimony that Smith acted reasonably.  *See* Pls.' Mem. [277] at 4.  They do not question Cunningham's qualifications as an expert in water treatment but argue that "his opinion that Ed Smith acted reasonably has no sound basis in fact."  *Id.* at 1.

Plaintiffs' liability theory is that "a water treatment company should provide an oxidizing biocide to control bacteria, such as the Legionella bacteria." *Id.* at 4.  They contend that "Ed Smith did not recommend an oxidizing biocide.  Instead, Mr. Smith informed the owner of the Hotel Chester that you could use any two biocides, whether it be two oxidizing biocides, two non-oxidizing biocides, or a combination of the two." *Id*.  Based on this alleged fact, Plaintiffs fault Cunningham for opining that Smith acted reasonably and for not knowing other details related to Smith's work. *Id*. at 4–5.  They summarize in reply that "Cunningham has no idea of any site specific conditions at the Hotel Chester to justify Smith not recommending an oxidizing biocide." Pls.' Reply [327] at 1.

Plaintiffs' argument fails, however, because a factual basis exists for finding that Smith did recommend an oxidizing biocide.  Smith testified as follows:

> Q:  So I think I know the answer, but you recommended -- what chemicals did you recommend that he purchase?
>
> A:  Eighty, MB-2128, whatever they were calling Bromax back in those days, *the oxidizer*, and a pump to pump it . . . .
>
> Q:  And did you recommend that he -- that he purchase an oxidizing bioside in addition to the nonoxidizing?
>
> A:  Yeah, I mean, yeah.
>
> Q:  Okay.

4

> A: I mean, it would be a liquid, and yeah, it would've been an oxidizing liquid.
>
> . . .
>
> Q: Okay. And on top of that you recommended that he purchase an oxidizing bioside.
>
> A: An oxidizer and a pump to pump it with.
>
> . . .
>
> Q: All right. Before I leave this I just want to make crystal clear that you recommended that he use two biocides, an oxidizing and a nonoxidizing. Correct?
>
> A: Yes.

Smith Dep., Ex. 1 [283-1] at 72–73, 76 (emphasis added).

Plaintiffs argue that these statements are belied by Smith's later testimony that he "offered two biocides" and "probably [did] not" use the words "oxidizing" and "nonoxidizing" when recommending products to the hotel. Pls.' Rep. [286] at 3 (citing Smith Dep., Ex. 1 [283-1] at 121). They then characterize Smith's deposition testimony as admitting that "[i]t didn't make any difference between oxidizing or nonoxidizing biocides, as long as you had two biocides." *Id.* (citing Smith Dep., Ex. 1 [283-1] at 171).

But this argument fails to fully account for Smith's testimony that he was attempting to sell both an oxidizing and a nonoxodizing biocide. Smith testified that he would not have explained the difference between the two to the customer because the customer would not "know what the heck I'm talking about." Smith Dep., Ex. 1 [283-1] at 121. Instead, Smith simply referenced "two biocides," *id.* at 171, but Smith "knew what [he was] recommending." *Id.* at 121. He was recommending that the customer "use two biocides, an oxidizing and a

5

nonoxidizing." *Id.* at 75–76.  Indeed, his earlier testimony suggests that he referred to both products as biocides or by their product-specific name, such as "MB-2128" or "Bromax."  *See, e.g.*, *id.* at 73, 75.  Accordingly, there is a factual basis from which Cunningham could conclude that Smith recommended an oxidizing biocide and then opine as to the reasonableness of that recommendation.

At best, Plaintiffs may have identified potential analytical gaps.  But "[i]n the sufficiency-of-the-evidence context, these alleged analytical gaps do not take [the opinion] out of the realm of substantive evidence.  Rather, the gaps go to the weight of the evidence, which the jury [will be] free to balance and [Plaintiffs are] free to argue." *Wackman v. Rubsamen*, 602 F.3d 391, 403 (5th Cir. 2010) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (second alteration in original) (citations and internal quotation marks omitted).  Accordingly, Plaintiffs cannot demonstrate that Cunningham lacks a proper factual basis to support his opinion.  The Motion is denied.

III. Motion in Limine to Exclude Evidence of Subsequent Remedial Measure

NCH apparently intends to offer evidence that after the injuries occurred, former Defendant Suite Dreams modified the water-cooling tower in the Hotel Chester by eliminating a "dead leg" in the plumbing that supposedly prevented NCH's water treatment from being effective.  Plaintiffs seek to exclude the evidence under Rule 407 as a subsequent remedial measure.

A. Standard

As summarized by the Fifth Circuit Court of Appeals:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering

>evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation and quotation omitted). In the instant Motion, Plaintiffs seek to exclude evidence of a subsequent remedial measure under Federal Rule of Evidence 407. That rule provides:

>When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
>• negligence;
>
>• culpable conduct;
>
>• a defect in a product or its design; or
>
>• a need for a warning or instruction.
>
>But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

      B.    Analysis

This motion in limine reaches the Court in an unusual posture. Rule 407 typically operates as a defense to prevent plaintiffs from introducing evidence of a remedial measure taken by the defendant after the event that resulted in injury or harm. Here, however, it is Plaintiffs who attempt to invoke the rule to prevent NCH from offering evidence of a modification to the water-cooling tower made by another defendant that is no longer a party to this action. Plaintiffs acknowledge this posture is atypical, but contend that allowing NCH to offer the modification as evidence would be "contrary to Rule 407 and [] its purpose." Pls.' Mem. [280] at 7. For the reasons that follow, the Court finds this argument unavailing.

As a threshold issue, the parties dispute the purpose of the evidence. According to Plaintiffs, NCH hopes to use it to prove Suite Dreams was at fault, thus offering the measure to "prove[] negligence [or] culpable conduct." Fed. R. Evid. 407. NCH contends, however, that the evidence speaks to causation and that, as a defendant, it has no burden of proof, so it is not using the evidence to prove anything. Def.'s Mem. [285] at 8. It is not clear whether NCH is thereby abandoning its Twelfth Affirmative Defense seeking allocation of fault under section 85-5-7 of the Mississippi Code. *See* Def.'s Answer [27] at 3. And unless NCH waives that defense, it has the burden of proving it. *See Eckman v. Moore*, 876 So. 2d 975, 989 (Miss. 2004) (en banc). Thus, for purposes of this Order, the Court will assume NCH intends to use the evidence to contest causation and in support of its allocation defense. Regardless, the evidence is admissible.

First, the structure and policy underlying Rule 407 indicates that it was intended as a privilege for *defendants* to prevent a subsequent remedial measure from being used as substantive evidence of their liability—i.e., as an admission of fault. The commentary to the rule states that "the more impressive [] ground for exclusion rests on a social policy of encouraging people to take . . . steps in furtherance of added safety." Advisory Committee's Note to Rule 407. It accomplishes this purpose by prohibiting a defendant's remedial action from being offered as substantive evidence of that defendant's liability. *See, e.g.*, *Louisville & N. R. Co. v. Williams*, 370 F.2d 839, 843 (5th Cir. 1966) ("[E]vidence of subsequent repairs or improvements by a defendant altering the scene of an accident may not be admitted in evidence to show negligence on the part of the defendant."). Consistent with this policy, the Fifth Circuit has held that "neither the text of [R]ule 407 nor the policy underlying it excludes evidence of subsequent

8

repairs made by someone other than the defendant" because "[t]he party making the repair is not penalized by the admission of the evidence." *Grenada Steel Indus., Inc. v. Ala. Oxygen Co.*, 695 F.2d 883, 889 (5th Cir. 1983).

Recognizing this hurdle, Plaintiffs note that Suite Dreams was indeed a defendant in this action before it was dismissed. Pls.' Reply [293] at 2–3. But reading the *Grenada Steel* holding this narrowly ignores the Fifth Circuit's reasoning for finding Rule 407 inapplicable to a third-party's remedial measures. As the court noted, the rule's policy goals are not furthered when the entity responsible for the remedial measure is not harmed by admitting the evidence. *See Grenada*, 695 F.2d at 889. Here, Suite Dreams is no longer a party and thus does not face any risk of being penalized for having adopted the remedial measure in question. And in any event, Plaintiffs fail to cite any authority validating a plaintiff's offensive use of Rule 407 or otherwise allowing the rule to be invoked by a party other than the one who undertook the remedial measure.[1]

Finally, Rule 407 expressly provides that a court may admit evidence of the remedial measure for another permissible purpose. Although not expressly stated in the rule, NCH contends that one permissible purpose is to demonstrate a lack of causation. Def.'s Mem. [285] at 9. This interpretation finds clear support in the case law, as the Fifth Circuit has "long recognized that subsequent remedial measures can be introduced on the issue of causation if that is in controversy." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 429 (5th Cir. 2006).

---

[1] In fact, the only citation in Plaintiffs' Reply refers to the purpose of Rule 407 as a means of "encouraging voluntary change to improve a product and reduce the possible hazard to a user." Pls.' Reply [286] at 7. Plaintiffs do not explain how this purpose would be hindered by admitting the evidence at issue, and in any event, the Court is not prepared to recognize a novel use of Rule 407 based solely on a broad policy statement.

9

Because causation remains in dispute, this is clearly a permissible purpose. Thus, even if Plaintiffs were capable of invoking Rule 407, the Court finds that NCH has offered a proper basis for admitting evidence of the subsequent remedial measure. The Motion is therefore denied.

IV.     Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Plaintiffs' Motion to Exclude [276] and Motion in Limine [279] are denied.

**SO ORDERED AND ADJUDGED** this the 17th day of March, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE